UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES ANTHONY TOLAN, | Case No. 3:10-cv-00017-ECR-RAM |
| Plaintiff, | |
| vs. | ORDER |
| CITY OF RENO; RENO POLICE OFFICER AMANDA HARTSHORN, OFFICER MICHAEL BARNES, et al., | |
| Defendants. | |

Defendants have filed a Motion (#44) to Dismiss Plaintiff's Second Amended Complaint ("SAC") (#41), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) and to strike certain portions thereof, pursuant to Fed. R. Civ. P. 12(f). Plaintiff has opposed (#50) the motion, and Defendants have filed a reply (#53) in support of the motion. We previously entered our order (#40) dismissing in part Plaintiff's First Amended Complaint (FAC) and allowing Plaintiff the opportunity to file a Second Amended Complaint (SAC) which he has done (#41).

### FIRST CAUSE OF ACTION

In the First Cause of Action, Plaintiff alleges he was arrested by Defendants Hartshorn and Barnes without probable cause.

Defendants contend that Plaintiff was not arrested by Hartshorn and Barnes at all at the time of the incident complained of and, therefore, there could be no arrest without probable cause.

A person is arrested or seized only if in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. The reasonable person test is an objective one applied from the viewpoint of an innocent person.

There is also an element of detention involved in an arrest. Thus, if an officer states to a person,"you are under arrest" or points a gun at him and tells him to stop and the individual runs away, there is no arrest. Here, when Barnes pulled his handgun and ordered Plaintiff to stop and Plaintiff ran away and was not detained, there was no arrest.

The Second Amended Complaint (SAC) alleges that after Plaintiff ran away from Officer Barnes he jumped over the railing of a second story building in an attempt to evade Officer Barnes; that Plaintiff fell to the ground, the impact causing a severe compound fracture of his right leg; and that Defendant Hartshorn had arrived on the scene to assist Officer Barnes.

The SAC then alleges: "Hartshorn and Barnes approached the prone, injured Plaintiff. The nature of his injury was profoundly evident. Tolan was at that time under arrest and was subsequently prosecuted for being in possession of a stolen vehicle. He was not free to leave and was unable to summon medical care because the two officers assisted by other officers refused to allow anyone to come to his aid. Hartshorn then confronted Plaintiff, questioning him regarding the other individual and refusing Tolan medical care. Hartshorn was assisted by Barnes and other officers. Plaintiff was refused medical care while he was being interrogated. While the defendants refused to provide medical care, an ambulance was standing by and was deliberately kept from responding." (SAC at p.2, ll 24-28 and p. 3 ll 1-3).

1     The question for the Court is whether the pleading is sufficient to allege
2 that Plaintiff was under arrest at the time in question. Plaintiff's summary
3 allegation that "Tolan was at that time under arrest" is merely conclusory and not
4 determinative. Defendants' argument that Plaintiff was not free to leave at that
5 time because of his broken leg is true, but it does not tell the whole story. The
6 ambulance was standing by and at Plaintiff's or the officers' request would have
7 removed him from that location. Plaintiff was free to leave in the sense that at
8 his request the ambulance attendants would have taken him from the scene, but
9 for the officers' insistence that he remain in that location without the help of the
10 ambulance crew, so that they could question him about the other individual who
11 had escaped.

12     No one at the scene said to Plaintiff, "you are under arrest," but a
13 reasonable person in Plaintiff's circumstances with the officers standing over him
14 and questioning him would not have believed he was free to leave that location
15 and that scene even though he otherwise might have been able to depart via the
16 ambulance. While we find this issue to present a fairly close question, it appears
17 for pleading purposes at this stage of the action, taking the allegations of the
18 SAC as true, together with all reasonable favorable inferences therefrom, the
19 allegations of the SAC with respect to the First Cause of Action do state a
20 constitutional claim. It is not inconceivable that at summary judgment, or some
21 other subsequent stage of the proceedings, it may turn out no arrest in fact
22 occurred at that time.

23     In our previous order (#40) in analyzing the First Cause of Action as
24 pleaded in the First Amended Complaint (FAC) (#20), we concluded Plaintiff
25 had alleged a Terry Stop, that there was reasonable suspicion for the stop and
26 dismissed this cause of action on that basis.

27     In contrast to an arrest, a Terry Stop is a relatively brief investigatory stop
28 based on objectively reasonable suspicion that criminal activity is afoot. A

3

1  reasonable person detained in such circumstances would conclude that after brief
2  questioning, he or she would be free to leave.  The SAC does add some
3  additional facts to the scenario that are over and above those pleaded in the FAC:
4  that Barnes had seen Plaintiff and another individual exit a vehicle that was
5  reported stolen; that Barnes pulled his handgun and ordered Plaintiff and the
6  other individual to stop; that Plaintiff was subsequently prosecuted for being in
7  possession of a stolen vehicle.
8       We consider the totality of the circumstances in making our judgment as to
9  whether Plaintiff's detention by the officers was a Terry Stop or a full fledged
10 arrest.  Considering the facts pleaded in the SAC as true with all reasonable
11 inferences being taken in favor of Plaintiff, we conclude that a reasonable person
12 in Plaintiff's situation would conclude that after brief questioning he would not
13 have been free to leave after the officers' interrogation was completed.  These
14 pleaded facts and inferences viewed from the perspective of a reasonable person
15 appear to meet, but to barely meet, tests for an arrest.  As noted above, this
16 conclusion as a matter of fact  may well be modified or even reversed at a later
17 stage in the proceedings.
18      The Motion to Dismiss (#44) as to the First Cause of Action will therefore
19 be <u>DENIED</u>.
20
21                      <u>SECOND CAUSE OF ACTION</u>
22      Plaintiff's Second Cause of Action is based upon a claim that Defendants
23 Hartshorn and Barnes were constitutionally deliberately indifferent to Plaintiff's
24 serious medical needs during the time they detained him on the ground to
25 interrogate him regarding the other individual who escaped and refused Plaintiff
26 medical care for the severe compound fracture of his right leg.
27      Our discussion with respect to the First Cause of Action that Defendant
28 was for pleading purposes arrested and therefore in custody during the time he

was interrogated determines the outcome of this issue.  The defense is essentially that there was no arrest at that time; that Plaintiff was not a pretrial detainee; and, hence, the officers had no constitutional duty to have his serious medical injuries attended to.  If as we have found the pleading in the SAC is sufficient with all reasonable inferences drawn in favor of the Plaintiff to show that Plaintiff was under arrest at that time, he was a pretrial detainee entitled constitutionally to have the officers address his serious medical needs.

In our previous Order (#40), we dismissed these claims on the basis that Plaintiff's detention was only a Terry Stop and hence the obligation to see to Plaintiff's medical needs was questionable.  The repleading of the First Cause of Action and Second Cause of Action leads us to the conclusion that Plaintiff had, at least for the purposes of this pleading stage, been arrested by Hartshorn and Barnes at the scene of the subject incident.  We have therefore found that the obligation of the officers to address Plaintiff's medical needs did kick in at that time.

Defendants' Motion to Dismiss (#44) as to the Second Cause of Action will therefore be <u>DENIED</u>.

### THIRD CAUSE OF ACTION

Plaintiff's Third Cause of Action is based upon the claim that Defendants had a policy that allowed and encouraged the alleged misconduct and failed and refused to investigate or take corrective actions when made aware of it.  The SAC alleges Defendants allowed and encouraged misconduct.

The issue we must address is whether this pleading is sufficient to show that the City had an unconstitutional custom, policy, or practice of its police officers arresting people without probable cause and/or of deliberate indifference to serious medical needs of persons in police custody.

The allegation that the City had a policy that allowed and encouraged the

5

1  "described misconduct" is conclusory in nature.  Simply making such an
2  allegation does not in the general terms stated present facts from which it may be
3  concluded that the City had such a policy.  The allegations are purely formulaic.
4       A plaintiff may prove the existence of a custom or informal policy by
5  showing repeated constitutional violations.  A custom must be so persistent and
6  widespread that it constitutes a settled policy which can result in municipal
7  liability.   A custom may not be predicated on isolated or sporadic incidents.
8       This pleading is simply inadequate to establish that the alleged custom or
9  practice was founded on practices of sufficient duration, frequency, and
10 consistency that it was a policy of the City.  This issue was also dealt with in
11 detail in our previous order (#40).
12      Defendants' Motion to Dismiss (#44) as to the Third Cause of Action will
13 therefore be <u>GRANTED</u>.
14
15                       FOURTH CAUSE OF ACTION
16      Plaintiff's Fourth Cause of Action is based on what Plaintiff characterizes
17 as "Custom and Policy Through Ratification."  The allegations are that
18 Defendants Poehlman and the City ratified and encouraged the conduct of
19 Hartshorn and Barnes at the scene in question and thereby adopted and
20 incorporated this conduct as custom and policy for the City; that Defendants
21 Poehlman and the City ratified, encouraged, and allowed the described
22 misconduct by refusing to properly investigate and address similar incidents in
23 the past; that for the past fifteen-plus-years, Reno Police Department has
24 encouraged and allowed officers to misrepresent and conceal misconduct in order
25 to escape liability and accountability; that Defendant Poehlman adopted the
26 policy shortly after assuming supervision of the Department; and that Defendant
27 Poehlman and the City became aware of misconduct and failed to take action,
28 and ratified the misconduct by this failure to address the misconduct.

In part, for the reasons stated with respect to the dismissal of the Third Cause of Action and the additional analysis set forth below, we find that allegations that Defendant Poehlman and the City ratified and encouraged the conduct of Hartshorn and Barnes and thereby adopted their conduct as custom and policy of the City is without merit with respect to the claims made in this cause of action. The alleged ratification of the conduct at issue did not in this case create a City policy condoning such conduct.

Ratification of a subordinate's conduct by a City policymaker can result in liability for the municipal defendant, the City in this case. It is the act of the policymaker that creates liability. The question with respect to this issue in this case is whether the acts attributed to the policymaker in the SAC constituted the ratification necessary to impose liability on the City. Here, the alleged ratification consisted of refusing to properly investigate and address similar incidents in the past. Certainly this past conduct of the claimed policymaker could not by itself be the basis of a claim respecting the present incident at issue. Nor could the fact that for the past fifteen years the police department allowed officers to misrepresent and conceal misconduct in order to escape liability and accountability constitute ratification of the Defendant officers' conduct with respect to the incident at issue.

The critical issue to be dealt with here is whether the act or acts attributed to the policymakers in the SAC constituted "ratification." The precedential authority indicates that ratification occurs if the authorized policymaker approves a subordinate's decision and the basis for it. The refusal, as pleaded here, to take action and address the misconduct does not constitute ratification such that would impose liability on the City. Such conduct does not constitute an affirmative conscious choice by the policymaker to approve the subordinates' acts or the basis for them. The pleading is insufficient to show ratification.

There is little doubt that Defendant Poehlman was a policymaker for the

7

1  City, but the conduct attributed to him in the SAC did not constitute ratification
2  to impose liability on the City.  The City itself is not as such a policymaker.
3  Some official of the City must act as policymaker for it.  The failure of Defendant
4  Poehlman and the City to train and supervise the other defendants does not
5  constitute ratification of the conduct at issue.  The filing of a complaint with the
6  Internal Affairs Department and subsequent denial of wrongdoing on the part of
7  the Defendants do not constitute ratification.
8      There was no ratification that adopted the conduct of the officers at the
9  scene as a custom or policy of the City.  No facts supporting ratification have
10 been pled.
11     Defendants' Motion to Dismiss (#44) will therefore be GRANTED as to
12 the Fourth Cause of Action.

## FIFTH CAUSE OF ACTION

15     The Fifth Cause of Action is a supplemental state claim for negligence.  In
16 their motion (#44), Defendants seek to dismiss this claim on the basis that under
17 Nevada law, the state defined Terry Stop was a justified seizure and detention
18 because the officers had reason to believe Plaintiff had committed or was about
19 to commit a crime.  This argument now fails according to our analysis because
20 we have found above that the SAC pleading may reasonably be interpreted as
21 indicating Plaintiff was under arrest at the time of the incident in question.
22     Defendants' Motion to Dismiss (#44) will therefore be DENIED as to the
23 Fifth Cause of Action.

## SIXTH CAUSE OF ACTION

26     Plaintiff's Sixth Cause of Action is a state supplemental claim for
27 intentional and negligent infliction of emotional distress.
28 / / /

8

A.  Intentional Infliction of Emotional Distress

In his opposition to the motion, Plaintiff did not present any legal or factual arguments. Defendants claim that the conduct of the officers was not so extreme and outrageous as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. The conduct of the officers in questioning Plaintiff for several minutes about the other individual who escaped does not appear to meet such a test for a claim of intentional infliction of emotional distress.

Further, the claim of intentional infliction of emotional distress appears to be pled in a conclusory fashion with no substantial supporting facts. Defendants' Motion to Dismiss (#44) as to the Sixth Cause of Action insofar as it alleges a claim for intentional infliction of emotional distress will be <u>GRANTED</u>.

B.  Negligent Infliction of Emotional Distress

The Sixth Cause of Action insofar as it alleges a claim for negligent infliction of emotional distress presents a more difficult question. The SAC makes a specific reference to a claim of Defendants' negligence. The SAC alleges that the officers questioned Plaintiff for several minutes about the escaped individual; they knew or should have known this would cause and did cause Plaintiff to suffer severe emotional distress. Defendants contend they are entitled to defenses of lack of duty, lack of injury, and alternatively justification. The justification referred to appears to be a defense for a Terry Stop under Nevada State law. It further appears that the Defendant officers may have had a duty to Plaintiff not to negligently inflict such distress on him in the circumstances. The SAC does plead injury. The Sixth Cause of Action is pleaded in an essentially conclusory fashion which makes the issue difficult to decide at this juncture of the case.

The arguments presented by Defendants in their motion (#44) do not appear to present a sufficient and appropriate basis to dismiss the claim for

1  negligent infliction of emotional distress at this stage of the proceedings.  The
2  motion by Defendants (#44) to dismiss Plaintiff's Sixth Cause of Action for
3  negligent infliction of emotional distress will therefore be <u>GRANTED</u>.

## SEVENTH CAUSE OF ACTION

Our previous Order (#40) dismissed this same claim as pled at that time in the FAC as conclusory.  This is a state supplemental claim for negligent hiring, training, supervision, and retention.   The SAC adds to the allegations in the FAC that:

    (1)    Defendant Barnes pulled his handgun and ordered Plaintiff and the other individual to Stop.

    (2)    Defendants Poehlman and the City failed to exercise reasonable care for the safety and protection of Plaintiff with respect to the hiring, supervision and retention of Hartshorn and Barnes.

These additional allegations stated in very general and conclusory terms add little to save this claim.  The claim remains without any material, substantial, factual support.  Defendants' Motion to Dismiss (#44) will be <u>GRANTED</u> as to the Seventh Cause of Action.

## EIGHTH CAUSE OF ACTION

The Eighth Cause of Action of the SAC seeks punitive damages. This is not as such a cognizable cause of action.  It may be a basis for damages arising from other causes of action.

In response (#50) to the Motion to Dismiss (#44), Plaintiff states that his inclusion of punitive damages against the City in the SAC is an oversight and will be stricken.  In our previous order (#40), we found that punitive damages are unavailable against the City under the federal claims pursuant to § 1983, and against all Defendants on the state claims, but that Plaintiff could seek punitive

10

1  damages against Hartshorn and Barnes in their individual capacities on Plaintiff's
2  § 1983 claims.
3    Defendants' Motion to Dismiss (#44) the Eighth Cause of Action for
4  punitive damages will be <u>GRANTED</u>.

## NINTH CAUSE OF ACTION

No cause of action as such may lie for attorney's fees under the facts of this case. Defendants' Motion to Dismiss (#44) will be <u>GRANTED</u> as to the Ninth Cause of Action.

## DEFENDANT POEHLMAN

In our foregoing Order, we did not dismiss the First Cause of Action of the SAC. However, the pleaded claim against Defendant Poehlman in the First Cause of Action is that the conduct of Hartshorn and Barnes was with the assistance, approval, and encouragement of Defendant Poehlman. This is a § 1983 federal claim. There is no respondeat superior liability under § 1983. To be liable, a supervisor must participate in the objectionable conduct. The general conclusory assertions of assistance and approval are not adequate to show the supervisor, individually, participated in Hartshorn and Barnes' alleged conduct. The First Cause of Action must be dismissed as to Defendant Poehlman.

The specific allegations in the Second Cause of Action of the SAC do not mention any additional conduct of Defendant Poehlman with respect to what Hartshorn and Barnes did. For the same reasons as mentioned above with respect to the First Cause of Action against Defendant Poehlman, the Second Cause of Action in the SAC will be dismissed.

The Third and Fourth Causes of Action appear to be allegations against the City. These causes of action will be dismissed as to Defendant Poehlman. The Fifth and Sixth Causes of Action are brought against Defendants Hartshorn and

11

1   Barnes and are not pleaded against Defendant Poehlman.

2   By the foregoing orders and analysis, we have dismissed the Seventh and
3   Eighth Causes of Action. Defendant Poehlman is not liable in his official
4   capacity since such claims against him are duplicative of Plaintiff's claims
5   against the City.

6   Therefore, there are no remaining claims against Defendant Poehlman, and
7   he will be dismissed entirely from the action.

## CITY OF RENO

10   We now address whether the pleading of the SAC with respect to the
11   remaining First and Second Causes of action is sufficient as to the Defendant
12   City of Reno. The liability of the City can only be found in an unconstitutional
13   custom, policy, or practice of its police officers arresting people without probable
14   cause or of deliberate indifference to serious medical needs of persons in police
15   custody.

16   In the First Cause of Action of the SAC, Plaintiff alleges in conclusory and
17   formulaic fashion that in doing the acts alleged, Hartshorn and Barnes acted in
18   accordance with custom and policy of all the defendants. The Second Cause of
19   Action of the SAC makes no reference to any custom, policy, or practice of the
20   City at all.

21   In our previous order (#40), we carefully analyzed the requirements of
22   pleading an action against a municipal entity such as the City of Reno. Insofar as
23   the Defendant   City of Reno is concerned, the SAC did not respond to the issues
24   raised in our previous order. The pleading of the First and Second Causes of
25   Action simply do not plead an action for municipal liability. The one conclusory
26   allegation mentioned above is inadequate to do so.

27   The other two remaining undismissed state supplemental claims, the Fifth
28   Cause of Action as to negligence and the Sixth Cause of Action for negligent

1    infliction of emotional distress are aimed at Defendants Hartshorn and Barnes,
2    but on the basis of the present pleading, the Motion to Dismiss (#44), the
3    opposition, and reply we are unable to determine if the City is liable as well on
4    these state law claims but from our perspective we conclude might be.  The City,
5    therefore, at this point in the proceedings, will remain as a Defendant with
6    respect to the Fifth Cause of Action for negligence  and the Sixth Cause of
7    Action for negligent infliction of emotional distress.

## DEFENDANTS' MOTIONS TO STRIKE
## SUBSTITUTION OF CITY OF RENO FOR RENO POLICE DEPARTMENT
## REFERENCE TO OFFICIAL CAPACITY OF DEFENDANTS

12   The SAC contains allegations against the Reno Police Department which
13   have been dismissed with prejudice from the action because it is not a separate
14   legal entity that may be sued.  The Reno Police Department is simply a part of the
15   City of Reno.  The allegations in the pleadings with respect to the Reno Police
16   Department are considered by the Court to be made in reference to the City of
17   Reno.  In the event that the SAC is referred to at trial, in each case where
18   reference is made to the Reno Police Department, the reference instead shall be
19   considered to be made to the City of Reno.
20   Defendants' motion to strike (#44) on this issue is GRANTED with respect
21   to references to the Reno Police Department on the foregoing basis.
22   IT IS HEREBY FURTHER ORDERED that Defendants' motion to strike
23   (#44) reference to the conduct of Hartshorn, Barnes, and Poehlman as acting in
24   their official capacities is GRANTED.  Such references are stricken from the
25   SAC and shall not be referred to in the future proceedings in the case.  Color of
26   law is a term of art and does not require an employee of the City to act in an
27   official capacity.  Claims based on official capacity against these Defendants are
28   duplicative of those made against the City.

1    IT IS THEREFORE HEREBY FURTHER ORDERED that Defendants'
2    Motion to Dismiss (#44) Plaintiff's Second Amended Complaint (SAC) is
3    GRANTED and DENIED on the bases set forth above as follows:
4        (1)   DENIED as to the First Cause of Action;
5        (2)   DENIED as to the Second Cause of Action;
6        (3)   GRANTED as to the Third Cause of Action;
7        (4)   GRANTED as to the Fourth Cause of Action;
8        (5)   DENIED as to the Fifth Cause of Action;
9        (6)   GRANTED as to the Sixth Cause of Action for intentional infliction
10             of emotional distress;
11       (7)   DENIED as to the Sixth Cause of Action for negligent infliction of
12             emotional distress;
13       (8)   GRANTED as to the Seventh Cause of Action;
14       (9)   GRANTED as to the Eighth Cause of Action;
15       (10)  GRANTED as to the Ninth Cause of Action.

17   IT IS FURTHER ORDERED that Defendant Poehlman is dismissed
18   entirely from this action.
19   / / /
20   / / /
21   / / /
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

1  IT IS FURTHER ORDERED that Plaintiff's motion to be permitted to file a third amended complaint is DENIED. The Court in its previous Order (#40) carefully analyzed and explained the deficiencies of the FAC. Plaintiff had broad discretion to file the SAC addressing these matters. There is no indication in Plaintiff's further filings which would indicate that there are additional facts or contentions which would enable Plaintiff to cure the deficiencies of the SAC which we have noted in our orders. We find further amendment of the complaint would be futile.

Dated this 18th day of August 2011.

_____
EDWARD C. REED, JR.
United States District Judge